**Richmond.**

Norfolk Railway & Light Co. v. Consolidated Turnpike Co.

March 12, 1902.

1. STREET RAILWAYS—*Occupation of Public Roads—Power to be Clearly Conferred—Case in Judgment.*—A street railway company cannot lawfully occupy a public road in the country unless authorized to do so by the Legislature, or by the county, where the Legislature has delegated such authority to the county. The authority must be by express enactment, or by implication so clear as to leave no room for doubt. It cannot occupy a public road under a general authority to extend its lines not exceeding twenty miles into the country beyond city limits. This is true, whether the proposed service be a commercial street railway, or one for the transportation of passengers only. The general power to extend into the country is a grant of power to acquire a right of way by purchase or condemnation. In the case in judgment, the power to condemn a right of way, the right to use steam as a motive power, the failure to mention public roads expressly, the failure to give the supervisors of the county a voice in the matter or the right to impose any terms or conditions as the price of the privilege, while such rights were extended to the adjacent city, and other circumstances, negative the idea that power was conferred on appellant to occupy the public roads of a county which are the property of the State held for the benefit of the people of the whole State.

2. NORFOLK COUNTY ROADS—*Powers of Road Trustees—Street Railways.*—The authority of the Board of Road Trustees of Norfolk county extends only to working and keeping in repair the roads of the county. The Board has no power to consent to the occupation of the public roads of the county by a street railway.

Appeal from a decree of the Circuit Court of Norfolk county, pronounced June 24, 1901, in a suit in chancery wherein the ap-

pellee was the complainant, and the appellant was the defend-
ant.

*Affirmed.*

The opinion states the case.

*Wolcott, Wolcott & Gage* and *White, Tunstall & Thom,* for the
appellant.

*Wm. W. Old & Son,* for the appellee.

HARRISON, J., delivered the opinion of the court.

The bill in this case was filed by the appellee, a duly incor-
porated turnpike company, to enjoin the appellant, a duly in-
corporated street railway company, from occupying with its
tracks a certain turnpike or road in the county of Norfolk, ex-
tending from a point near the gate of the Norfolk City Park, in
Norfolk county, to Tanner's Creek. The appellee owns a toll
bridge over Tanner's Creek, to which this road is the approach.
It claims to be the fee simple owner of the road in question,
and insists that the action about to be taken by the appellant, in
erecting poles, laying ties and rails upon the road-bed, for the
purpose of running its cars thereon, is without warrant or au-
thority, an invasion of the rights of appellee, and an effort to
take its property without compensation, and without due process
of law.

The answer of appellant admits its purpose to extend its
street railway service over and upon the road in question, and
insists that it is fully authorized to do so. It denies that the
appellee is the fee simple owner of the road, and insists that said
road has always been regarded as a highway for the benefit of
the public generally.

In accordance with the prayer of the bill, an injunction was
granted, and from that decree this appeal has been taken.

In the petition some question is made as to the propriety of
the action of the Circuit Court in overruling the motion of the

appellant to dissolve the injunction granted upon the filing of the bill, and in continuing the cause to be heard on its merits. We are unable to see that appellant was prejudiced by the action complained of, and we are led to infer that appellant does not attach importance to the suggested error, because no reference is made to the point in argument; and in the brief of counsel it is said: "The question in this case is: Does a street railroad, to be operated only for the transportation of passengers, constitute an additional eastment or servitude upon a road not within the corporate limits of a city, when that road has been dedicated, as a road, to the use of the public for fifty years? This is the sole question in the case."

In the view taken of this case, it is not necessary to determine whether the road in question is a public thoroughfare, or the private property of the appellee, for, if it be the latter, the steps required by law to condemn a right of way have not been taken; and, if it be a public road, the appellant has not the requisite legislative authority to establish its street car service thereon.

Whether or not a street railway established and operated upon a public road in the country constitutes an additional easement or servitude, entitling the abutting land-owner to compensation for the resulting damage, is a question of much importance. It need not be decided in this case, however, because unless the appellant has legislative authority to build its street car line, as proposed, the question does not arise.

The appellant is a consolidation of the Norfolk Street Railroad Company and the Norfolk and Ocean View Railroad Company. And the Norfolk Street Railroad Company was a consolidation of the Norfolk City Railroad Company and the Suburban and City Railway and Improvement Company. All the rights, powers and privileges enjoyed by these several companies are now merged into and enjoyed by the appellant company.

`. The charter of the Norfolk City R. R. Co. was granted by act of the General Assembly approved January 4, 1866, and was subsequently amended by acts approved July 8, 1870, and December 19, 1889. The language relied on by appellant as giving it the authority to construct its street car line over the road in question is found in the amended act approved December 19, 1889, and is as follows:

*"That it shall be lawful for said company to lay out, construct and equip, maintain and operate, with horse or mule power, or cable, electricity or any other motive power, a single or double-track railroad in the city of Norfolk, throughout the entire length of Main street, down Market Square to the Ferry Wharf, up Church street to the "Fair Grounds," in Norfolk county, and also through such other streets, or parts of streets, in said city as the directors may determine, and also to such other points in the counties of Norfolk and Princess Anne, not exceeding twenty miles in length from the limits of the city of Norfolk, with single or double track, and to be operated with horse, mule, steam power, electricity, cable or any other motive power: Provided, that before such work shall be commenced in said city, the consent of the Council of said city shall be obtained thereto."* Acts 1889-90, p. 26.

Appellant contends that this is ample legislative authority to construct its street railway service over and upon the road in question, and insists that this is more manifest when it is considered that said road is the physical extension of Church street, over which its cars run to the "Fair Grounds," in Norfolk county; that the power granted to extend its line twenty miles into Norfolk county contemplated its being extended longitudinally over this alleged public road. It is further pointed out that before the streets in Norfolk city could be occupied by the appellant, the consent of the Council had to be obtained; that there being no such restriction before constructing the road in Norfolk county, the maxim *expressio unius exclusio est alterius* applies.

A street railway company cannot lawfully occupy a public road in the country, unless it has authority to do so from the Legislature, or from the county, where the power to grant such authority has been delegated to the county by the Legislature. The authority must be by express enactment, or by implication so clear as to leave no doubt that it was granted. It cannot occupy a public road under a general authority to extend its lines not exceeding twenty miles into the county from the city limits. And this is true whether the proposed service be a commercial street railway or for the purpose alone of transporting passengers.

In the case at bar, no express authority is given the appellant company to occupy a public road in Norfolk, or Princess Anne county. The power granted is general, to lay out, construct and equip, maintain and operate, with any kind of motive power, including steam, a single or double-track railroad in the city of Norfolk, and to such other points as the directors may determine, not exceeding twenty miles in length from the city limits, into the counties of Norfolk and Princess Anne. The appellant has no power except that which is derived from the act of incorporation, and there are no words in its charter from which an implication can be drawn that would justify its appropriation of a public road in Norfolk or Princess Anne county for its railway purposes.

The public roads are the property of the State, for the benefit of the people of the whole State, and it would require very clear and explicit language to hold that the Legislature intended, by the act under consideration, to confer upon the appellant unlimited power to occupy, in its discretion, for street railway purposes, the public roads of Norfolk and Princess Anne counties. Such a grant of power would hardly have been made without mention of the public roads, and without giving the supervisors of either county a voice in the matter, or the right to impose any terms and conditions as the price of such privi-

lege. The mere fact that the appellant has the right under its charter to use steam power in propelling its cars, if it desires to do so, tends to show that the right claimed was not contemplated by the Legislature. The further fact that in the city of Norfolk, where conditions are favorable to the use of street cars, appellant was required to obtain the consent of the Council before commencing its work, goes far to show that the Legislature never intended the public roads in the country, where the use of street cars would be an experiment, to be occupied by appellant without any consent or supervision of the local authorities. The only reasonable interpretation that can be put upon the act is that it was a grant of power to appellant to acquire by purchase or condemnation a right of way through the counties of Norfolk and Princess Anne for a distance of twenty miles, to such points as it desired to reach.

This view is further strengthened by the fact that section 5 of the act approved December 19, 1899, provides that: *"The said company, so to be consolidated, may acquire by condemnation, according to the laws of Virginia, the lands required for the right of way of any extension or branches of its railroad, and necessary depots and stations for its operations."* Acts 1893-4, p. 17. This is the act consolidating the Norfolk City Railroad Company and the Suburban and City Railway and Improvement Company into the Norfolk Street Railroad Company, which latter company is one of the two merged into the appellant company.

The act cannot be construed to give appellant the right to occupy the public roads. Such an unusual grant of power must be clear and explicit.

Appellant relies upon a resolution of the Board of Road Trustees of Norfolk county, giving its consent to the use of the road in question. This Board had no authority to grant such right. It is manifest from the act creating the Board of Road

Trustees of Norfolk county that their authority extended only to working and keeping in repair the roads of the county.   Acts 1893-4, p. 127, as amended by act of 1895-6, p. 846.

For these reasons the decree appealed from must be affirmed.

*Affirmed.*